This case arises out of an appearance by Ms. Sarah Weddington as a speaker in a student-sponsored lecture at the University of Alabama ("University") on October 3, 1989. Ms. Weddington was the attorney for the plaintiff in the landmark abortion-rights case of Roe v. Wade, 410 U.S. 113,93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and frequently gives lectures concerning the legal implications of that case. The plaintiff in this case, a law student at the University and an opponent of abortion, filed this suit to challenge the right of the University to use a portion of her student activity fee to fund the lecture given by Ms. Weddington.
The plaintiff filed suit on October 10, 1989 in the Circuit Court of Tuscaloosa County. The complaint alleged breach of contract and unequal bargaining, arising out of the procedure by which Ms. Weddington was selected as one of the speakers in the University lecture series. The plaintiff further alleged that the Weddington lecture violated plaintiff's rights to free speech and association, and also violated federal law. The named defendants were E. Roger Sayers, president of the University, and Kathleen Randall, director of the Office of Student Life, along with Student Life personnel Jeff Monroe and Jeff Lisenby. The complaint was later amended to dismiss Monroe from the suit and add Tom Burke. However, Burke was never served with process. Each party was sued both as an agent of the University and as an individual. Neither the University nor its Board of Trustees was named as a defendant.
On November 15, 1989 the defendants filed a motion to dismiss. On April 24, 1990 the defendants moved to convert this motion into a motion for summary judgment pursuant to Rule 56, Alabama Rules of Civil Procedure. The defendants filed a brief and several affidavits in support of summary judgment, and the plaintiff filed two affidavits in opposition. On May 21, 1990 the trial court held a hearing on the motion. The motion for summary judgment *Page 1137 
was granted on June 21, 1990. The plaintiff appeals.
We begin by recognizing that summary judgment may be granted only where it is shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, A.R.Civ.P. In its order granting the motion, the trial court found, among other things, that the defendants were entitled to sovereign immunity from claims against them in their official capacities. The court further found that there was no genuine issue of material fact for which the defendants could incur personal liability.
The plaintiff argues that the trial court erred in finding that sovereign immunity entitled the defendants to judgment as a matter of law on each of the counts of her complaint.
The defendants were granted immunity under article I, § 14 of the Constitution of Alabama 1901, which states that "the State of Alabama shall never be made a defendant in any court of law or equity." This section also extends to protect agents or officials of the state, when acting in their official capacities, where a verdict favorable to the plaintiff would directly affect a property or contract right of the state, or would result in the plaintiff's recovery of money from the state. Hutchinson v. Board of Trustees of the University ofAlabama, 288 Ala. 20, 256 So.2d 281 (1971); Aland v. Graham,287 Ala. 226, 250 So.2d 677 (1971). An agent of a state university, performing his official duties, is entitled to protection from suit by section 14, unless that official exceeds the authority given him and acts contrary to the rules and regulations of the university. DeStafney v. University ofAlabama, 413 So.2d 391 (Ala. 1981). Further, agents or employees of the state are not liable in their individual capacities if they acted officially or pursuant to their discretionary administrative functions. Hickman v. Dothan City Board ofEducation, 421 So.2d 1257 (Ala. 1982); DeStafney.
In Counts One, Two and Three of her complaint, the plaintiff alleges that a contract existed between the University and herself, based on Article 3 and Article 5 of "The University Programs Constitution." Article 3 of that document states that "membership in University Programs is open to all University of Alabama students." Article 5 sets out the procedure whereby University events must be approved. In her complaint the plaintiff claims that the alleged contract contained in Article 3 was breached by the "arbitrary and capricious manner" whereby the defendants chose students to become members of University Programs. The plaintiff further claims that the alleged contract contained in Article 5 was breached by the approval of Ms. Weddington as a participant in the University lecture series. In these claims, the plaintiff apparently contends that the defendants exceeded the scope of their official authority and violated University regulations, thus losing the § 14 immunity from suit in their official capacities.
We find that these claims are wholly unsupported by the evidence. There is absolutely no evidence by which the provisions of the University Programs Constitution could be construed as a valid contract between the University and the plaintiff. Moreover, there is no evidence that the defendants ever exceeded their authority or violated University regulations by approving the Weddington lecture. On the contrary, the record clearly shows that most of the defendants had nothing whatsoever to do with this approval process or with the selection of members for University Programs. There is no evidence which would deprive the defendants of their sovereign immunity to these claims nor is there any evidence which would support a claim against them in their individual capacities. Indeed, there is no evidence to support the merits of the claims themselves. We thus find that summary judgment was properly granted on these counts.
In another count of her complaint, the plaintiff alleges that approval of the Weddington lecture was in violation of certain federal statutes. The federal statutes cited by the plaintiff relate primarily to the *Page 1138 
regulation of federal funds in the performance of abortions. It is clear that these statutes are completely irrelevant to any of the activities upon which this lawsuit is based. Accordingly, we affirm the granting of summary judgment on this count.
In the remaining counts of her complaint, the plaintiff alleges that, in approving the Weddington lecture, the defendants violated her constitutional right to freedom of expression and assembly.
The plaintiff points out that the University Programs lecture series was supported in part by mandatory student fees. The plaintiff argues that, by requiring her to help subsidize a forum for views with which she disagrees, the defendants have infringed upon her constitutional protection from coerced expression. The plaintiff also argues that this forced subsidy was violative of her right to freedom of association, implicit in the United States Constitution. Baird v. State Bar,401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971).
The United States Supreme Court has held that the college classroom and its surrounding environs is peculiarly the "marketplace of ideas," and that such academic freedom must be protected. Healy v. James, 408 U.S. 169, 92 S.Ct. 2338,33 L.Ed.2d 266 (1972). Furthermore, the Supreme Court has said that, while a state may regulate the time, place, and manner of public speakers, these regulations may not be used to discriminate among speakers according to the orthodoxy or popularity of their political or social views. Niemotko v.Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951). Such discrimination denies both the speaker and the listeners equal protection of the law. Niemotko. See also Brooks v. AuburnUniversity, 296 F. Supp. 188 (M.D.Ala.), aff'd, 412 F.2d 1171
(5th Cir. 1969) (University attempt to prevent lecture by controversial speaker held violative of equal protection of laws). Clearly, it is incumbent on a state university to promote the dissemination of ideas to its students; it would be a barren marketplace of ideas that had only sellers and no buyers. Lamont v. Postmaster General, 381 U.S. 301,85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).
The first amendment of the United States Constitution does protect a student in a state school from official compulsion to adopt or verbalize any particular political or personal philosophy. Board of Education v. Barnette, 319 U.S. 624,63 S.Ct. 1178, 87 L.Ed. 1628 (1943). However, as a matter of law and fact, there has been no such compulsion in this case. While the subject matter of the Weddington lecture may have indeed been repugnant to the plaintiff, the evidence shows that the named defendants have in no way deprived the plaintiff of her right to express her opinions. The record shows that the plaintiff protested the lecture by picketing on University property, outside the campus building where Ms. Weddington was speaking. During the course of the lecture, time was allotted for questions and rebuttal from the audience; thus, if the plaintiff had attended the presentation, she would have been afforded the opportunity to personally express her views to Ms. Weddington. In the weeks following the lecture, the campus newspaper published several editorials written by the plaintiff in which she expressed her opposition to the lecture. The newspaper also published letters from other students with views similar to the plaintiff's. This newspaper, like the lecture series, is a forum supported in part by the plaintiff's mandatory student fees. It thus cannot be said that the plaintiff's student fees were used to force her adoption of any particular opinion, or to compel her association with antithetical views. Rather, the University distributed the plaintiff's student fees among various forums in order to present diverse views, including her own.
Even if the alleged constitutional deprivations were grounded in fact, the doctrine of sovereign immunity acts to protect the defendants against what is essentially a suit against the state, barred by § 14. We note that the plaintiff, in alleging the constitutional violations, asks for monetary damages for the "intentional infliction of Emotional Distress." Sovereign *Page 1139 
immunity does not extend to protect state officials from personal liability for torts committed in their official capacities. DeStafney. Here, however, the plaintiff has produced no evidence of such a tort.
The trial court's granting of summary judgment is without error and it is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.